Collins, Judge,
delivered the opinion of the court;
Plaintiff, a former employee of the Department of the Interior, sues under the “Salary Retention Act of 1956.”[1] This act applied to certain Government employees who had been placed in a lower grade as a result of the “reclassification” of their position. The effect of the act was to grant to such persons the rate of compensation which they were receiving immediately prior to the reclassification. To come within the terms of the act, the employee must have held his position on June 18,1956, and must have occupied it continuously during the preceding 2 years. Also, the reclassification must have occurred during the period July 1, 1954, to June 17, 1956. With regard to plaintiff, the Civil Service *3 Commission, determined that bis demotion did not result from a reclassification and that, therefore, he was not entitled to salary retention benefits.
The relevant facts can be summarized as follows: Prior to May 10,1954, plaintiff served, in grade GS-15, as Chief Counsel, Bureau of Mines. One of his duties included the handling of all patent work for the Bureau. In February 1954, the Secretary of the Interior approved a plan for the reorganization of the Solicitor’s Office. The reorganization, which became effective on paper on May 10, 1954, affected plaintiff in several ways. First, the title of Chief Counsel was replaced by that of Acting Assistant Solicitor for the Bureau of Mines. All patent duties were to be transferred to a new position, Patent Attorney, which would serve the entire Department. Second, plaintiff was given a temporary assignment as Acting Assistant Solicitor for the Bureau of Mines. Third, he was informed that he would become the Patent Attorney.
The transition within the Solicitor’s Office under the reorganization took almost 2 years. During much of this time plaintiff “wore two hats,” i.e., Acting Assistant Solicitor, Bureau of Mines, and Patent Attorney, Interior Department. Not until October 3,1955, was plaintiff relieved of his duties as Acting Assistant Solicitor so that he could devote full time to the job originally planned for him, Patent Attorney.
Part of the reorganization consisted of a complete review of all the new positions in order to classify them for the proper salary grade. The resultant position description for plaintiff was not completed until November 1955. Both the job of Assistant Solicitor and that of Patent Attorney were eventually classified as grade GS-14. Plaintiff received the salary of a GS-15 (from 1950) until March 11,1956, when he was changed to the lower grade and salary.
Plaintiff contends that he qualifies under the terms of the “Salary Retention Act” and that he is entitled to recover, for the appropriate period, the salary differential between grades GS-14 and GS-15. His contention is based upon a definition of the term “position” which makes it equivalent to a job on an organizational chart within an agency. Thus, if plaintiff *4 “wore two hats,” i.e., occupied two jobs in the Solicitor’s Office, he would also have had two “positions.” If either job was held for the 2-year period, then he would qualify under the act. Plaintiff contends (1) that he was both Patent Attorney and Assistant Solicitor, Bureau of Mines, from June 18, 1954, until October 3, 1955, and (2) that he continued as the Patent Attorney until his retirement in 1959. Plaintiff argues that the Patent Attorney job qualifies him under the act. We do not agree, and, therefore, we need not decide whether plaintiff actually was the Patent Attorney on June 18,1954.[2]
The applicable statutory[3] definition of “position” is as follows: “the work, consisting of the duties and responsibilities, assignable to an officer or employee.” Thus, contrary to plaintiff’s argument, his position was the total work assigned to him, whether or not this corresponded to more than one slot in the organization. Our construction of the statute is similar to that of the Civil Service Commission and the latter interpretation is entitled to great weight. Cf. Allison v. United States, 157 Ct. Cl. 7, 12, 301 F. 2d 670, cert. denied, 371 U.S. 901 (1962).
Moreover, the act applies only to an employee whose demotion was caused by a “reclassification.” [4] Here, the Civil Service Commission determined that, since a material change in plaintiff’s work had taken place, his demotion did not result from a “reclassification.” Absent a showing of arbitrariness or capriciousness on the part of the Civil Service Commission, its decision is final. E.g., Hofflund v. United *5 States, 154 Ct. Cl. 66, 70 (1961).[5] In the case at bar, there has been no such showing. To the contrary, the record makes clear that the decision of the Commission was a proper one.
Between late June 1954 and early October 1955, plaintiff devoted approximately two-thirds of his time to non-patent work for the Bureau of Mines. After October 3,1955, plaintiff was, with minor exceptions, occupied exclusively with his duties as Patent Attorney. As determined by the Civil Service Commission, the fact that this material change in plaintiff’s responsibilities took place is fatal to his claim.
Therefore, plaintiff is not entitled to recover. The petition is dismissed.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Lloyd Fletcher, and the briefs and argument of the parties, makes findings of fact as follows:
1. Plaintiff is a citizen of the United States and a former employee of the Department of the Interior. He has filed this suit claiming that he is entitled to, but has not received, the benefits provided by the Salary Retention Act of 1956, ch. 402, 70 Stat. 291. The pertinent parts of that act read as follows:
(b) Each officer or employee subject to this Act—
(1) who, during the period beginning on July 1, 1954, and ending immediately prior to the date of enactment of this section continuously held a position (A) which was in any grade of a basic compensation schedule of this Act (other than grade 16, 17, or 18 of the General Schedule) and (B) *6 which was placed, at any time during such period, in a lower grade of such schedule under one or more reclassifications of such position pursuant to this Act;
(2) who holds such position on the date of enactment of this section;
(3) who has held such position for a continuous period of not less than two years ending immediately prior to the date of enactment of this section; and
(4) whose performance of the work of such position at all times during such period of two years specified in paragraph (3) of this subsection and also on the date of enactment of this section was satisfactory or better than satisfactory,
shall be granted, effective as of the first day of the first pay period which begins after the date of enactment of this section (if he continues to hold such position on such first day of such first pay period), the rate of basic compensation to which he was entitled immediately prior to such reclassification of his position * * * including any increases in such rate of basic compensation provided by law at any time while such officer or employee is in such position, until (i) he leaves such position or (ii) he is entitled to receive basic compensation at a higher rate by reason of the operation of this Act; * * * Approved June 18, 1956.
2. Plaintiff holds academic degrees in law and chemical engineering. His employment with the defendant began as a chemist for the Bureau of Mines, Department of the Interior. Later he was a Patent Examiner with the United States Patent Office. In 1945 he returned to the Department of the Interior as an attorney in the Bureau of Mines where he was principally engaged in the prosecution of patent applications relating to the synthetic liquid fuels program of that bureau. In about 1950, plaintiff was promoted to the position of Chief Counsel, Bureau of Mines, at the classified title and grade of Supervisory Attorney-Adviser, GS-970-15. On March 11, 1956, he was demoted to Attorney-Adviser, GS-970-14, by virtue of a reorganization of the legal activities of the Department of the Interior which *7 became effective on May 10, 1954, and which is described hereinafter.
3. In August 1952 a “Position Description” was issued on Civil Service Commission Standard Form No. 75 covering the duties and responsibilities of the position of Chief Counsel, Bureau of Mines, then held by plaintiff. After providing that the occupant of the position should serve “as the Chief Legal Officer of the Bureau of Mines with immediate responsibility for providing all legal services for the Bureau,” the Position Description goes on to describe in detail various legal services required of the Chief Counsel in the field of Bureau contracts, patents, legislation, and mine safety. In the patent field, his duties were described as follows:
As Chief Legal Officer of the Bureau is responsible for the systems, their procedures and methods by which patents are obtained for inventions of processes, items of material and equipment, machinery, apparatus and all other inventions resulting from professional, scientific, technologic and other experimental research and study including synthetic liquid fuels, fuels technology, mineral and mining technology, explosives, solid fuels, gases and related fields of research and experimental work. Serves, as required, in the capacity of attorney or counsel for inventors of the Bureau, legal representative of the Bureau, or adviser and counsel for officials of the Bureau or the Solicitor of the Department on patent matters.
4. On February 5, 1954, a Survey Team submitted to the Secretary of the Interior its Report on Eeorganization of the Solicitor’s Office. In the Report, 14 broad recommendations were made for an efficient and economical operation of the Solicitor’s Office, including, inter alia, the following specific recommendation:
* * * A patent attorney for the entire Department would be attached to the Office of the Deputy Solicitor.
By memorandum to the Solicitor dated February 9, 1954, the Secretary of the Interior approved the Report and requested the Solicitor to implement all 14 recommendations at the earliest possible opportunity.
5. In compliance with the Secretary’s memorandum, the *8 Solicitor issued a reorganization memorandum dated May 3, 1954, reading in pertinent part, as follows:
The present organization of the Office of the Solicitor is abolished and the organization of the office is established as recommended in the Survey Team’s Report and as shown on the organization chart attached thereto, as follows:
Deputy Solicitor. The Deputy Solicitor assists the Solicitor in the discharge of his duties and in the absence of the latter performs his functions. The Deputy Solicitor may exercise the full authority of the Solicitor on any matter that comes before him. _ The Deputy Solicitor supervises the work of the Associate Solicitors, that of the Executive Assistant and Expediter, who overseas [sic] the operating procedures within the Office of the Solicitor, and that of the Patent Attorney, who is initially responsible for all matters relating to inventions made by employees of the Department.
‡ ‡ H* $
The organizational title of “Chief Counsel” is abolished and the organizational title of “Assistant Solicitor” is established. All persons occupying the positions bearing the former title will be designated as “Acting Assistant Solicitor” for the time being and they will perform their duties to accord with the functional responsibility of the respective Associate Solicitors, as generally defined above.
The integrated Solicitor’s Office will be quartered on the 5th and 6th floors of the Interior Building. Specific space assignments will 'be made at a later date. Pending 'such assignments, the Acting Assistant Solicitors and their staffs will remain in their present quarters but will perform their duties as members of the integrated Solicitor’s Office. Details of administration, such as personnel actions, payrolls, etc., will be covered by later orders.
* * * *
It is my desire that there be full cooperation on the part of all persons at all levels in making the transition to the integrated Solicitor’s Office in order that there will be a minimum disruption in the performance of the legal services of the Department. Such cooperation is not only invited but is insisted upon.
This memorandum supersedes all outstanding organizational memoranda of former Solicitors. Memoranda dealing with administrative details will continue in force and effect until further notice. * * *
This memorandum shall be effective May 10, 1954.
*9 On May 4,1954, the Secretary of the Interior approved the Solicitor’s reorganization memorandum of May 3, 1954.
6. By memorandum dated June 8, 1954, the Acting Solicitor made “tentative personnel assignments” of Acting Assistant Solicitors. Plaintiff was named for one of these tentative assignments, namely, Acting Assistant Solicitor for the Bureau of Mines. So far as the record discloses, in plaintiff’s case this “tentative personnel assignment” appears to have been nothing more than a change of his previous title of Chief Counsel, Bureau of Mines. However, on the same date of June 8, 1954, plaintiff also received a memorandum addressed to him by the Acting Solicitor reading as follows:
Under .the general reorganization of the legal work of the Department, and pending such time as definite assignments of personnel on the integrated basis can be made within the Office of the Solicitor, it is desired that you serve in the position of Patent Attorney under the immediate supervision of the Deputy Solicitor.
The effective date of this assignment will coincide with the date on which office space in the additional quarters allotted to the Office of the Solicitor is made available to you.
For the time being also, you will continue to serve in the capacity of Acting Assistant Solicitor for the Bureau of Mines.
7. On July 16, 1954, plaintiff, in his capacity as Acting Assistant Solicitor for the Bureau of Mines, addressed a memorandum to the Solicitor which dealt with an invention report by employees of the Fish and Wildlife Service. In that memorandum plaintiff stated:
The file on this subject was only recently turned over to the writer for necessary action. Although pressure of other work, coupled with the unavoidable interference due to the physical relocation of my office from the fourth to the. seventh floors has permitted only a hasty review of this file, I believe the following comments and suggestions are in order.
It is practically impossible, either now or within the reasonably near future, to undertake the preparation and filing of a patent application on this development, here in the Department.
*10 After discussions with Mr. A. F. Hollins of the Branch of Fish and Wildlife, and with Mr. T. Haywood Brown of the Patent Section, Civil Division, Department of Justice, I believe that the interests of the Department, and the public, will be best served by having the case processed by Mr. Brown’s office.
The “physical relocation” of his office referred to by plaintiff had taken place not over 8 weeks prior to July 16,1954, or approximately on June 25, 1954. This move was into quarters allocated to him as Acting Assistant Solicitor for the Bureau of Mines, and at that time it was explained to him by the Acting Solicitor that, because of a shortage of space, he was to perform his dual function of Patent Attorney in the same quarters. It was not until October of 1955 (when he was relieved of the duties and responsibilities of the position of Acting Assistant Solicitor, Bureau of Mines) that he was allotted space as the Department’s Patent Attorney. During that interval of time from late June 1954 to early October 1955, plaintiff devoted approximately one-third of his time to his duties as Patent Attorney and the remainder to his duties as Acting Assistant Solicitor for the Bureau of Mines. After October 3, 1955, except for a few items of unfinished business in the Bureau of Mines, plaintiff devoted all his time to his duties as Patent Attorney (later known as Assistant Solicitor, Branch of Patents).
8. Viewed as of June 18, 1954, plaintiff’s caseload in the area of patent law, with but one exception, related to Bureau of Mines matters for which he was previously responsible as chief legal officer of that Bureau. See finding 3, suPra. The exception referred to was a patent matter arising out of the pending case in this court styled Autogiro Company of America v. United States, Ct. Cl. No. 50328. On June 11, 1954, the Department of Justice requested the Solicitor of the Department of the Interior to furnish comments on Motions and Interrogatories filed in that case. On June 18,1954, that inquiry was referred to plaintiff by the Solicitor. After a great deal of study and work on the case, plaintiff prepared a reply on July 9, 1954, and forwarded it to the Solicitor for signature. In addition, prior to June 18, 1954, plaintiff was called upon to answer infor *11 mally a number of patent questions because of the general understanding that he was to be the Department’s Patent Attorney under the reorganization plan.
9. From the record in this case, it appears that before the reorganization described above, plaintiff and Mr. Bruce Wright were the two lawyers in the Department of the Interior most directly connected with its various patent matters. It has been stipulated that prior to July 6, 1954, plaintiff was engaged in the prosecution only of such patent applications as were based upon inventions made in the work of the Bureau of Mines. Patent applications with respect to inventions by employees in bureaus other than the Bureau of Mines were then Mr. Wright’s responsibility in his capacity as chief of the Claims Division. By July 6, 1954, however, Mr. Wright seems clearly to have understood that plaintiff had been placed in charge of all the Department’s patent matters, including patent applications. He testified that following the reorganization of the Solicitor’s Office in the late spring and early summer of 1954, the handling of patent matters was no longer a part of his duties and responsibilities. On July 6, 1954, he forwarded numerous patent cases in his office to plaintiff under a covering memorandum reading, in part:
There are attached 14 of the patent cases which the Department of Justice returned to us in October 1953. Justice first informed us of the proposed action in a letter dated September 4,1953, a copy of which is attached, as is also the list of patent matters which accompanied that letter.
* * * *
All of the patent matters which appear on the list accompanying the letter of September 4, 1953, and which are checked in red, accompany this memorandum. Thirteen cases were sent to you on January 25, 1954, and a list of these cases is attached.
Justice listed the following number of “applications not acted on”:
Mines-15 + (1 case, not listed, was returned.)
Surrey_2
BPA_7
Reclamation_7
F&WS-2 + (1 case, not listed, was returned.)
33 + 2 = 35
*12 You will find that there are documents relating to the cases on the list in the folders which were maintained in the former Claims Division, and which I shall send to you.
Also, on July 8, 1954, the Department’s liaison officer to the Government Patents Board, Theodore H. Haas, advised plaintiff as follows:
I have today notified by telephone the General Counsel, Mr. McLaughlin, of the Board that I was no longer doing patent work and asked him to notify Dr. Palmer who was out at the time of my call. Mr.. McLaughlin indicated that he would like to have a written notification of this fact and also who my successor would be. I believe that such notification to Dr. Palmer should come from either the Solicitor, the Deputy Solicitor or from you.
On August 11, 1954, the Solicitor wrote the Chairman of the Government Patents Board as follows:
This is to inform you that Mr. Donald G. Welsh, Patent Attorney (Code 181, ext. 4007), is the liaison officer for the Department of the Interior on the Government Patents Board, to succeed Mr. Theodore H. Haas.
10. On September 3,1954, the Acting Solicitor sent a memorandum to all Bureaus and Offices in the Department of the Interior reading, in pertinent part:
In addition, Donald G. Welsh is designated as Patent Attorney. Por the time being, he will also serve as Acting Assistant Solicitor, Branch of Mines, Division of Mineral Resources.
This memorandum shall be effective September 3, 1954.
There is no dispute that thereafter plaintiff was, until his retirement, the Department’s Patent Attorney, his title later being changed to Assistant Solicitor, Branch of Patents. Plaintiff continued to serve as Assistant Solicitor for the Branch of Patents, reporting to the Deputy Solicitor, and as Acting Assistant Solicitor for the Branch of Mines, reporting to the Acting Associate Solicitor for Minerals Resources until on or about October 3, 1955, when he was relieved of his duties and responsibilities as Acting Assistant Solicitor for the Branch of Mines. This latter position was then filled by the assignment thereto of John L. Hofflund, theretofore serving as Acting Assistant Solicitor for the *13 Branch of Petroleum and Defense Minerals. Plaintiff thereafter held the single position of Assistant Solicitor, Branch of Patents, until his retirement on October 31,1959. Plaintiff’s service as such Assistant Solicitor, Branch of Patents, was at all times satisfactory.
11. Bearing an “Effective Date” of July 1, 1954, a Notification of Personnel Action (Standard Form 50) was issued to plaintiff. This form reflected that, as a result of the reorganization described above, plaintiff was part of a “Mass Transfer.” In plaintiff’s case, the transfer was from the Bureau of Mines to the Office of the Solicitor with no change in position title (Supervising Attorney - Adviser), grade, or salary. Subsequently, on August 23, 1954, the Solicitor issued a memorandum to all employees in his office stating, in pertinent part:
As a part of the administrative responsibility of the office in the integration of the legal activities of the Department and the relocation of the personnel engaged in such activities, it is necessary to review the responsibilities and duties of employees at all levels in the organization, both departmental and field. To the extent required, as a consequence of the findings, position descriptions will be rewritten.
As a result, a new Position Description (Standard Form 75) was issued to plaintiff on November 8,1955. This document set forth in detail the duties and responsibilities of the position of Assistant Solicitor, Branch of Patents, and recommended that the position bear a service, series, and grade of GS-970-14. Thereafter, on February 1, 1956, plaintiff was formally notified of a proposed change to lower grade.
12. On March 11, 1956, plaintiff was changed to a lower grade, namely, from GS-970-15 ($12,150 per annum) to GS-970-14 ($11,395 per annum). Believing that he was entitled to a saved rate of compensation under the Salary Retention Act of 1956, supra, plaintiff appealed to the Civil Service Commission. The final adverse action of the Commission is dated March 13,1958, and reads as follows:
The Board has completed a careful study of the record in the pase of your appeal under Section 25.411 of the Commission’s Pay Regulations from the decision of *14 the Bureau of Inspections and Classification Audits sustaining the determination by the Department of the Interior that you are not entitled to the salary retention benefits of Pubic Law 594,84th Congress, in connection with your demotion effective March 11, 1956, from Supervisory Attorney-Adviser GS-970-15, Bureau of Mines, to Attorney-Adviser (General) GS-970-14, Branch of Patents.
Your renewed request for an oral hearing was not granted by the Board, inasmuch as the written representations submitted indicated agreement by both parties with regard to the factual information essential to a proper adjudication of your appeal.
With reference to the previous decision, the Board found that a part of the change which the Bureau found to be material in your case occurred before the beginning of the two-year period for consideration in applying the definition of reclassification to your case; that is, the change in the officials to whom you reported occurred on May 10, 1954. Throughout the two-year period you reported to the Solicitor and the Deputy Solicitor.
Within the two-year period, until October 3, 1955, you performed legal work in connection with the miscellaneous matters arising from the Mines program. Included in the variety of such matters were patents and other intellectual property. After that date you were concerned solely with the legal matters connected with patents and other intellectual property, which had become the province of the Branch of Patents.
The attorney-adviser work performed by you during both portions of the two-year period was, on October 3, 1955, properly allocable to the General option of the Attorney-Adviser Series. The Mines position was so allocable.on the basis of the miscellaneous character of the legal matters dealt with, including patents, and the Patents position was so allocable on the basis that patents and other intellectual property had not yet been designated by the Commission as a distinct specialization of the Attorney-Adviser Series. In September 1957 the Commission did establish the Patent option, to which the attorney-adviser work in your position then became properly allocable.
The change in your position on October 3, 1955, corresponds in classification significance to the change which was made by the Commission in September 1957, when the Patent specialization was removed from the General category of the Attorney-Adviser Series and *15 became tbe basis for another class designation. A basic change on October 3, 1955, in the nature of your attorney-adviser workis thus evident, and since such a change meets the definition of material change which is cited in the previous decision, your demotion did not result from a reclassification of your position. The Department was therefore correct in its determination that you are not entitled to a saved rate in this instance.
Accordingly, the Board has affirmed the decision of the Bureau of Inspections and Classification Audits which sustained the Department’s adverse salary retention determination in connection with your demotion effective March 11, 1956.
On August 24,1958, under authority of Public Law 85-737, plaintiff’s annual salary in his position of Attorney-Adviser (Patent) (Assistant Solicitor) GS-970-14 was increased from $12,555 to $13,370. Effective October 31, 1959, he retired from Government employment and is presently engaged in the private practice of law.
CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover. The petition is dismissed.

 The “Salary Retention Act” refers to the following amendment to the Classification Act of 1949: the Act of June 18, 1956, ch. 402, 70 Stat. 291. The pertinent statutory provisions are set forth in finding 1, infra.
It should be noted that further amendment of this statute was effected by the Act of August 23, 1958, 72 Stat. 830, as amended, 5, U.S.C. § 1107 (1964).

 The evidence is conflicting as to the date when the new position of Patent Attorney came into existence and the date when plaintiff actually assumed this job in toto. See findings 6-11, infra.

 68 Stat. 957 (1949), 5 U.S.C. § 1091(1) (1964).

 The definitions of “reclassification” and “material change” contained In the Civil Service Regulations, 5 C.F.R. § 25.403 (Supp. 1956), were as follows :
“(c) ‘Reclassification’ means any classification action lowering the grade of the employee’s position during his incumbency of such position without a material change in duties or responsibilities during the two years immediately preceding the classification action.
“(d) 'Material change’ means either an actual change in duties or responsibilities sufficient in and of itself to warrant a different position grade or an actual basic change in the nature of the duties or responsibilities although such change is not sufficient to warrant a different grade.”

 In a case decided In this court in 1961, a fellow employee of the instant plaintiff sued under very similar circumstances. Hofflund v. United States, supra. Hofflund had also been a Chief Counsel to a branch within the Interior Department and his job was abolished by the May 10, 1954, reorganization. Likewise, he continued to perform his duties under the new title of Assistant Solicitor and retained his QS-15 rating. Finally, on October 3, 1955, Hofflund replaced plaintiff Welsh as Assistant Solicitor, Branch of Mines, so that Welsh could devote full time to the job of Patent Attorney. Hofflund later had his position classified as GS — 14, and he was placed in that lower grade in March 1956.
Hofflund was not permitted to recover. This court held that the adverse decision of the Civil Service Commission was final. 154 Ct. Cl. 66, 70.